OF THE

# STATE OF MISSOURI

AT THE

APRIL TERM, 1901.

---

*(Continued from Volume 163.)*

GARLAND v. SMITH, Appellant.

In Banc, June 18, 1901.

164  1
97a  ²241

1. **Equitable Life Estate:** DISPOSITION: POWER OF APPOINTMENT: BY DEED: BY WILL: GIFT: TRUSTEE: REMAINDER. A deed conveyed the land with the appurtenances, to a trustee, his heirs and assigns forever, however, for the sole and separate use and benefit of the grantor's wife for and during her natural life, "and she shall during the said term be permitted to have immediate occupation and use of the premises in person, or to receive the rents and profits thereof in her own hands, and shall have power to sell, mortgage, incumber, lease or otherwise dispose of the same to such persons and for such uses and purposes as she may at any time by writing by her signed, direct and appoint; and the said trustee, his heirs or assigns, shall execute and deliver to said persons, any and all deeds, mortgages, or leases necessary and proper for carrying into effect the power aforesaid, for the uses and purposes aforesaid, whenever he shall be thereto by her directed in the manner aforesaid; upon her death without

having disposed of the premises in the manner aforesaid, then for the use and benefit of the heirs of the body of her the said" wife "living at her decease, and in case of default of such heirs of her body living at her decease, then for the use and benefit of the right heirs of" plaintiff's father, "and the said trustee shall then convey the premises in fee simple to them to have and to hold the same to them, their heirs and assigns forever." *Held,*

1. Said deed conveyed: first, a legal title in fee simple to the trustee; second, it created an equitable life estate in the wife with a power of appointment superadded; third, a contingent remainder to the issue of the wife living at her death; and, fourth, in default of such issue, a contingent remainder to the heirs of plaintiff's father.

2. The power of *disposition* annexed to the life estate of the wife did not enlarge her life estate into an equitable fee simple.

3. The power of *appointment* in the wife "to sell, mortgage, incumber, lease or otherwise dispose of the same," was *appendant* to her life estate, thereby enabling her in the event of her insolvency to sell or mortgage the property for her support. But it did not create in her power to *give* it away during her life, either to her foster son by deed or to any other person or in any other way; nor did it permit her to *give* it away by will so as to destroy the remainder created in the heirs of plaintiff's father in case she died without living bodily heirs, the law concerning the execution of a *power in gross* being exceedingly strict in requiring a precise compliance with the direction of the donor as expressed in his deed. Nor did the use of the words, "or otherwise dispose of," enlarge the power of appointment so as to include a *gift* of the property. And her foster son (the grantee in her deed of gift and her devisee under the will) is chargeable with *notice* that she had no power to give the property away and hence he took no title by her deed or devise to him. The title at her death on the execution of a deed by the trustee, vested in the remaindermen, in spite of her deed and will giving it to others.

2. **Res Adjudicata:** FORMER ACTION. Where the action under consideration is based upon a different *claim and has a different object in view*, the former judgment bars only those things which were in issue or included in the issue in the former action: nor will the judgment bar another cause which might have been joined with the former cause of action, but was not; and if different proofs are required to sustain two actions, the judgment in one is no bar to the other.

Garland v. Smith.

Appeal from St. Louis City Circuit Court.—*Hon. H. D. Wood,*
Judge.

AFFIRMED.

*Frederick N. Judson, John F. Green* and *J. Clarence
Taussig* for appellant.

(1)　The power of disposition, over the remainder inter-
est in the real estate, given to Persis Smith by the trust deed
to Edward Filley, could be effectively exercised either by deed
executed in consideration of love and affection, or by last will
and testament.　(a)　Because it appears from the trust deed
that the grantor intended to place no limitation or restriction
upon the method by which she was to exercise her power of
disposition or appointment, except that it must be an instru-
ment in writing, which includes both deeds and wills.　Chance
on Powers, p. 778; Farwell on Powers, 143, 145; Wead v.
Gray, 78 Mo. 65; Smith v. Adkins, 41 Law J. Ch. 698; Irwin
v. Fanan, 19 Vesey, 66 ("by will or otherwise" deed held
good); Buchell v. Blenhorn, 5 Hare, 131 (deed or deeds, or
other writing); Taylor v. Mead, 4 De G., J. & S. 597; 4 Kent's
Commentaries, 330; Hill v. Jones, 56 Ala. 214.　(b)　Be-
cause it appears from the trust deed that the grantor executed
it to protect the estate of his wife from his marital rights dur-
ing coverture.　And, as it was a deed for the sole and separate
use of Persis Smith, conveying a life estate with power to dis-
pose of the fee to such person or persons and for such use and
purposes as she deemed best, she, as a married woman, could
execute that power, in any manner not expressly prohibited by
the terms of the trust deed.　Kim v. Wippert, 46 Mo. 532;
Ryland v. Banks, 151 Mo. 1.　(c)　Because it appears from
the trust deed, that the grantor made no limitation over as to

the proceeds of the said real estate in case it should be sold by Persis Smith, or as to any portion of the proceeds of sale that might remain unexpended at the death of Persis Smith, and no directions as to the reinvestment of the proceeds of a sale, or any portion thereof, for the benefit of Charles Garland or his heirs. In other words, it was the creation of a fund solely for the benefit of Persis Smith, and the designation of the heirs of Charles Garland was only for the contingency of Persis Smith failing to make any other disposition of the property, or to have heirs of her body to inherit it. Tyson v. Tyson, 31 Md. 134; Burbank v. Sweeney, 161 Mass. 490; Tower v. Hartford, 115 Ind. 186; Norcum v. D'Oench, 17 Mo. 116; Nevin v. Gillespie, 56 Md. 321. (d) Because it appears from said trust deed that the power given Persis Smith to dispose of the fee in said land, was given her to be exercised at her pleasure for such uses and purposes, and in favor of such person or persons as she pleased. The grantor did not restrict its exercise in favor of any particular class of remaindermen from whom she was to make the selection, and the occasion of its exercise was not conditioned upon her necessities. Burbank v. Sweeney, 161 Mass. 490; Norcum v. D'Oench, 17 Mo. 116; Tyson v. Tyson, 31 Md. 134; Nevin v. Gillespie, 56 Md. 321. (e) Because it appears that the remaindermen are not the heirs of James Smith, the grantor, but they are certain collateral heirs of Persis Smith, the donee of the power, and they were named in the trust deed only for the purpose of designating the disposition of the estate in the event of the donee of the power failing to make any other disposition, or having no heirs of her body. Norcum v. D'Oench, 17 Mo. 98. (f) Because the words "Or otherwise dispose of the same to such person or persons, and for such uses and purposes as she may at any time by writing, by her signed, direct and appoint," are as broad and comprehensive as it is possible to make them;

and in construing this deed it is the duty of the court to give effect to all its language, including these words, by which the grantor obviously intended to authorize a disposition of the property by way of gift, as well as by sale, exchange, or mortgage. Wead v. Gray, 78 Mo. 59; Drake v. Crane, 127 Mo. 85; Burbank v. Sweeney, 161 Mass. 490; Flanagan v. Flanagan, 8 Abbot's N. C. (N. Y.) 413; Tyson v. Tyson, 31 Md. 134; State v. Denstring, 33 Minn. 102; Tower v. Hartford, 115 Ind. 186; Nevin v. Gillespie, 56 Md. 321; Lowther v. Bembinck, 19 Eq. 167; Carpenter v. Mitchell, 54 Ills. 126; Downing v. Marshall, 23 N. Y. 388; Long v. Times, 107 Mo. 519; Phelps v. Harris, 101 U. S. 380; Burwell v. Anderson, 3 Leigh (Va.), 248. (2) But if the said warranty deed of June 26, 1888, was not effective to vest a fee simple estate in said land in defendant, because it did not contain a reference to the trust deed, then the will of Persis Smith, which expressly refers to the said power of disposition or appointment given Persis Smith by said trust deed, was an effective exercise of said power of disposition or appointment. 2 Jarman on Wills, p. 277; Gainsford v. Dunn, 17 Law Rep. Eq. 405; Ferrier v. Joy, Law Rep. 10 Eq. 550; Thornton v. Thornton, Law Rep. 20 Eq. 599. (3) Neither was it necessary that Edward Filley, the trustee, should join with Mrs. Smith in the execution of said warranty deed of June 26, 1888, or that appellant should obtain a deed from Edward Filley in order to perfect his title. The trust created by the deed of James Smith was a passive dry trust. Rylands v. Banks, 151 Mo. 1; Roberts v. Mosley, 51 Mo. 282; Pitts v. Sheriff, 108 Mo. 116; Cornwell v. Orton, 126 Mo. 366; Pew v. Hays, 113 Mo. 424; 2 Jarman on Wills, p. 277; Collier's Will, 40 Mo. 329; Gainsford v. Dunn, 17 Law Rep. Eq. 305; Ferrier v. Joy, Law Rep. 10 Eq. 550; Thornton v. Thornton, Law Rep. 20 Eq. 599; Coxan v. Rowlan, 1 Ch. 406 (1894); Amery v. Mere-

Garland v. Smith.

dith, 7 Allen 399; Hessen v. Hogan, 30 N. E. (Mass.) 469.

*Hiram J. Grover, J. E. McKeighan* and *Jos. S. Laurie* for respondent.

(1) Mrs. Smith had no power under the deed of 1865 from her husband to Filley, trustee, to give away the property in question. "Powers are to be construed in the light of the purpose which the donee of the power is appointed to accomplish and the intention of the donor as to its mode of accomplishment." 18 Am. and Eng. Ency. of Law, p. 895. "The extent of the power is to be settled by the language employed in the whole instrument, aided by the situation of the parties and the property and any other circumstances having a legal bearing and throwing light on the question." Le Roy v. Beard, 8 How. (U. S.) 466; Taussig v. Reel, 134 Mo. 542; Walton v. Drumtra, 152 Mo. 497. It appears that James Smith being apprehensive lest financial disaster should overtake him and sweep away all his property, executed this deed as a matter of precaution in order to assure his wife a home during life, and realizing that in the event of his insolvency she would need money for her support in addition to a home, he added a power of appointment to enable her to raise the necessary money out of the property. It being thus shown that his purpose was to secure to her, during life, the means of support in case he should become insolvent, it follows that he only intended to lodge in her a power of appointment to be exercised for her own benefit. This negatives and excludes any intention on his part to give her a power enabling her to donate the fee of the property and thereby deprive herself of the very means of support which he had thus set apart for her. He wished to protect this property from the claims of possible creditors in order that the same or its proceeds might remain, notwithstanding

Garland v. Smith.

his insolvency, a source of income and means of support to her. "The power to sell does not confer the power to mortgage nor make a gift of the property or transfer it for any purpose other than a completion of the sale:" 18 Am. and Eng. Ency. of Law, p. 940. "A power to sell does not authorize a gift of the property or of the transfer of it for any purpose other than in completion of the sale." Dupon v. Werthman, 10 Cal. 354; Ferry v. Laible, 31 N. J. Eq. 566; McDonald v. Quick, 139 Mo. 484. (2) Appellant insists that the sweeping phrase "or otherwise dispose of," so enlarges Mrs. Smith's power of disposal as to make it absolute, and thereby enable her not only to sell and incumber, but to give the property away, and that, too, either by deed or will, as she might see fit. On the other hand respondent contends that such general words, used as they are after specific terms, are to be confined to things *ejusdem generis* with the things previously specified. County of Johnson v. Wood, 84 Mo. 509; State v. Schuchmann, 133 Mo. 111; Price v. Courtney, 87 Mo. 387; McDonald v. Quick, 139 Mo. 484; Park's Admr. v. Am. Home Miss. Soc., 62 Ver. 19; Glover v. Reade, 80 Mich. 228; Robison v. Shotwell, 55 N. J. E. 318; Fleming v. Mills, 182 Ill. 464; Helferich v. Helferich, 26 Weekly Law Bull. 313; Sires v. Sires, 43 S. C. 266; Young v. Ins. Co., 101 Tenn. 311; Griffin v. Griffin, 141 Ill. 373; Price v. Bassett, 168 Mass. 598; Wooster v. Fitzgerald, 61 N. J. L. 368. A power in the life tenant to sell and dispose of the fee for her support and benefit is not a power coupled with an interest, but a naked power. Ferre v. Am. Board, 53 Vt. 162; Logue v. Batman, 43 N. J. Eq. 434; Morefrew v. Railway, 107 Cal. 587. A power to sell with interest in the proceeds is not a power coupled with an interest. Hall v. Gambrill, 34 C. C. A. 190; State ex rel. v. Walker, 125 U. S. 339; Green v. Cole, 103 Mo. 78; Wood v. Kice, 103 Mo. 336. (3) There was no valid execution by Mrs. Smith of her

power of appointment. Should it be held that the deed of 1865 was not intended merely for her support, and consequently that her power of disposal might be lawfully exercised for other purposes, still we contend for several reasons that there was no valid execution of the power. First. It was essential that the deed executing the power should have been executed by the trustee. Haymond v. Jones, 33 Gratt. 317; Pugh v. Hays, 113 Mo. 424; Walter v. Walter, 48 Mo. 140; Schouler, Husband and Wife, sec. 247; Schouler, Dom. Rel. sec. 136a; Bishop, Law Married Women, secs. 189, 195, 871; Tiedeman, Real Prop., sec. 564; Farwell on Powers, pp. 33-6; Williamson v. Beckham, 8 Leigh (Va.), 20. Second. The deed executed by Mrs. Smith to George Smith of date June 26, 1888, was not an execution of the power. Said deed is in the ordinary form of a warranty deed reciting a nominal consideration and describing the property by metes and bounds, but contains no reference to the power. Stimpson, Am. Stat. Law, secs. 1650, 1659; South v. South, 91 Ind. 591; Gindra v. Gas. Co., 82 Ala. 596; McCreary v. Bomberger, 151 Pa. St. 323; Farwell on Powers, sec. 157; Tiedeman, Real Prop., sec. 573; Owen v. Ellis, 64 Mo. 85; Perry on Trusts, sec. 511c; Bingham's App., 64 Pa. St. 345. Where the same person has an interest in land and a power to sell, and makes a conveyance of the property without reference to the power, the conveyance operates to convey his interest but not to execute the power. 18 Am. and Eng. Ency. of Law, p. 932; Mines v. Gambrill, 64 Md. 30; Bell v. Twilight, 22 N. H. 500; Cutting v. DeSartigas, 17 R. I. 666; Lardner v. Williams (Wis.) 74 N. E. 346; Holden v. Am. Investment Co., 94 Ga. 640. Third: The will of Mrs. Smith was not a valid execution of her power. This is true for two reasons; first, the will was not an appropriate instrument, and second, it does not disclose any intention upon her part to execute the power. The will can only speak

after her death, and, therefore, it must be held that Mrs. Smith died without having disposed of the property; that is to say, she died before disposing of the same. The trustee would have had no authority had he so desired, to make a deed or other conveyance in pursuance of the request or direction embraced in the will. This point has been settled by the Supreme Court of this State in Bradstreet v. Kinsella, 76 Mo. 63. The donee of a power of appointment has not by virtue thereof, any estate in the property, hence a will which contains no reference to the power, but devises in general terms all the testator's property can not be said to include the property which is the subject of the power, and is not an execution of the power. Bilderback v. Boyce, 14 S. C. 528; Burleigh v. Clough, 52 N. H. 267; Mason .v. Wheeler, 19 R. I. 21. (4) The gift of this property to George Smith was void by reason of the fiduciary relation between the parties. Hall v. Knappenberger, 97 Mo. 511; Cadwallader v. West, 48 Mo. 496; Ilgenfritz v. Ilgenfritz, 116 Mo. 437; Hatcher v. Hatcher, 139 Mo. 614; 27 Am. and Eng. Ency. of Law, p. 480, n. 3.

GANTT, J.—Action of ejectment in statutory form for a house and lot in the city of St. Louis, known as No. 1615 Olive street in said city. Ouster laid as of March 1, 1891. Monthly rents and profits alleged to be of the value of seventy-five dollars.

The answer was a general denial. Judgment in the circuit court for plaintiff for possession, and rents and profits assessed at fifty-five dollars a month, and damages for detention to time of judgment at five hundred and seventy-four dollars. Defendant appeals.

Prior to 1865 the title to the lot in suit was vested in James Smith, under whom both parties assert title.

On March 13, 1865, James Smith, for the recited con-

sideration of one dollar, conveyed said lot by a deed of bargain and sale to Edward A. Filley upon certain trusts which are declared in said deed as follows:

"To have and to hold the same with the privileges and appurtenances thereto belonging unto said party of the second part, his heirs and assigns forever, in trust, however, for the sole and separate use and benefit of said Persis Smith, wife of said James Smith, for and during the term of her natural life, and she, the said Persis, shall, during the said term, be permitted to have immediate occupation and use of the premises in person, or to receive the rents and profits thereof in her own hands, on giving her personal receipt therefor, which receipt shall be a full acquittance and discharge to her said trustee; and the said Persis shall have power to sell, mortgage, incumber, lease or otherwise dispose of the same to such person or persons and for such uses and purposes as she may at any time by writing by her signed, direct and appoint; and the said trustee, his heirs or assigns, shall execute and deliver to such person or persons, any and all deeds, mortgages, deeds of trust, leases or other instruments in writing necessary and proper for carrying into effect the power aforesaid, for the uses and purposes aforesaid, whenever he shall be thereto by her directed in the manner aforesaid; and upon the death of said Persis without having disposed of the premises in the manner aforesaid, then for the use and benefit of the heirs of the body of her the said Persis, living at her decease, *per stirpes,* and in case of default of such heirs of her body living at her decease, then for the use and benefit of the right heirs of Charles Garland, and the said trustee shall then convey the premises in fee simple to them to have and to hold the same to them, their heirs and assigns forever."

Mrs. Persis Smith was born in 1807, and at the date of the execution and delivery of said deed was fifty-seven or fifty-eight years old. James Smith, the grantor in said trust deed,

died October 16, 1877. Charles Garland, named in said deed, was a brother of Mrs. Persis Smith, and died in 1880, leaving as his heirs at law four children, James S. Garland, the plaintiff in this action, John T. Garland, Nathan N. Garland, and Jennie G. Hosmer, the wife of James K. Hosmer.

Mrs. Persis Smith died February 14, 1891, eighty-three or eighty-four years old, without ever having had any children, and on March 30, 1891, Edward A. Filley, the trustee in the trust deed of James Smith, never having been directed by Mrs. Persis Smith to execute any conveyance of said lot, conveyed the same to the heirs at law of Charles Garland, deceased, and recited that he made said deed in pursuance of the power conferred on him in and by the deed of James Smith and Persis Smith of date March 13, 1865.

Prior to the institution of this action John T. and Nathan N. Garland and Jennie G. Hosmer and husband conveyed their several shares in said lot to plaintiff James S. Garland.

On July 28, 1883, Mrs. Persis Smith executed a warranty deed to George Smith to the lot in suit, but George Smith refused to accept said deed and it was never recorded. On June 26, 1888, Mrs. Persis Smith again conveyed said lot by warranty deed to said George Smith, which was accepted by him and was duly recorded in the recorder's office of the city of St. Louis.

On the fifteenth day of October, 1890, Mrs. Persis Smith made her last will and testament which was duly probated after her death, in March, 1891, in which she declared that "she intended thereby to dispose of all her property of every nature whatsoever, wherever situated, of which she might die seized, or as to which she might have any power of appointment," and by the seventh clause of said will, she provided: "That all the rest, residue and remainder of the property, of whatsover nature, real, personal or mixed, wherever situated, of which I may die

seized, or as to which I may have any power of appointment, I give, devise and bequeath to my adopted son, called George Smith (whose family name is Connelly), who is now living with me at No. 1615 Olive street in this city, to have and to hold to him and his heirs forever."

The evidence introduced by the defendant also shows that Mrs. Smith in 1881 conveyed her property to James S. Garland and George Smith upon certain trusts; that in 1886, Garland reconveyed to Mrs. Smith the property which was conveyed to him as trustee, and that on September 22, 1886, Mrs. Smith again conveyed all her property to George Smith as trustee upon certain trusts.

It appeared from the evidence that James Smith received the defendant, then a destitute, homeless boy named George Connelly, into his family in 1838. The boy was then four or five years old. He was reared as their own child. When a young man he went to New Mexico and returned about 1860. He left St. Louis for New York in 1865, and from that time until the death of James Smith in 1877, held no communication with his foster parents. He did not return to St. Louis until December, 1880.

The defendant does not claim title through the warranty deed made to him in 1883, by Mrs. Persis Smith, as it appears from the evidence that he never accepted said deed. He claims, however, through the deed made by Mrs. Smith in 1888. The testimony very clearly shows that this last-mentioned deed, while nominally for the consideration of ten dollars, was in fact a gift of the said lot to defendant. Defendant also claims title under the last will of Mrs. Smith, insisting that her devise to him of said lot was a valid exercise of the power of appointment conferred on her by the deed of her husband, James Smith, of March 13, 1865.

Defendant further pleads res adjudicata in two other pro-

ceedings in the circuit court of the city of St. Louis.

I. The value of the real estate involved, and the legal principles by which the title must be determined, concur in rendering this case one of more than ordinary importance.

The propositions necessarily involved and ably discussed by counsel and our learned brother on the circuit, are these: ·

What estate did Mrs. Persis Smith acquire by the trust deed of James Smith of March 13, 1865, and what were the purposes, and the nature, extent and scope of the power of appointment conferred upon her by said deed?

Did the conveyance by deed of gift of June 26, 1888, constitute a valid execution of her power of appointment? Could that power of appointment be executed by last will?

As to the estates created by the deed of James Smith, we conceive there can be no doubt. By it a legal title in fee simple was conveyed to Edward A. Filley, the trustee therein named. An equitable life estate to Mrs. Persis Smith, his wife, with a power of appointment superadded, and a contingent remainder to the issue of Mrs. Persis Smith living at her death, and in default of such issue a contingent remainder to the heirs of Charles Garland.

The power of disposal annexed to the life estate of Mrs. Smith did not enlarge her life estate into an equitable fee simple. [Rubey v. Barnett, 12 Mo. 3; Gregory v. Cowgill, 19 Mo. 415; Lewis v. Pitman, 101 Mo. 281.]

Having ascertained the nature and extent of the estates created, we are brought to an examination of the nature and purposes of the power of appointment. It is well to keep in view, first, the terms of the power as expressed by the grantor, and, secondly, the circumstances attending the execution of the deed.

After the grant of the estate for life for her sole and separate use and benefit, the deed proceeds: *"And the said Persis*

*Smith shall have power* to sell, mortgage, incumber, lease or otherwise dispose of the same to such person or persons, and for such uses and purposes as she may at any time by writing by her signed, direct and appoint, and the trustee is directed to execute the writings necessary to carry into effect this power whenever directed by her."

Any person who is competent to dispose of an estate of his own may execute a power over land.

While not necessary to go into the learning on the subject of the powers to any great length, it is well enough to advert to some of the general principles laid down in the cases and treatises on the subject.

Thus Washburn on Real Property (5 Ed.), vol. 2, p. 691, says: "There is besides a subdivision of the class of powers, which are held by a donee who has some estate in the land, into powers appendant and powers in gross. Powers appendant are such as the donee is authorized to execute out of the estate limited to him, and depend for their validity upon the estate which is in him. He is thereby able to create an estate which will attach on an interest actually vested in him. The illustration given by Mr. Sugden is of a life estate limited to a man with a power to grant leases in possession, which must in every case have its operation out of his estate during his life. Powers in gross are such as one who has an estate in land has to create such estate only as will not attach on the interest limited to him, or to take effect out of his own interest. The illustration of HALE, Ch. B., of such a power, is where a tenant for life has a power to create an estate which is not to begin until his own ends. It is a power in gross, because the estate for life has no concern in it."

Applying these principles to the power conferred upon Mrs. Persis Smith, it was appendant so far as her right to lease, convey, or incumber her life estate, but in so far as it author-

ized her to appoint the fee, to begin after her life estate, it was a power in gross.

Says the same learned author (vol. 2, p. 707): "When the mode of executing a power comes to be considered, it will be found, that in order to the execution being valid, the law is exceedingly strict in requiring a precise compliance with the direction of the donor, as expressed in his deed or will," and particularly is this true as to a power to cut out remaindermen. Thus a naked power to sell is not a power to mortgage. [Price v. Courtney, 87 Mo. 391, and cases cited; Waldron v. McComb, 1 Hill, 111; 1 Chance on Powers (London Ed. 1831), p. 52.] A fortiori it is not a power to give away the property conveyed.

But, argues the learned counsel for defendant, a general power to appoint in writing may be executed by deed or will, and that the words of the deed conferred a general power and are not restricted to a conveyance of the property for value. In our own view this is a crucial test in this case.

In what manner and for what purposes was this power conferred upon Mrs. Smith? Did the grantor intend that his wife should give away this estate which he had set apart, first, to support and maintain her during her life, and after her death for the benefit of the heirs of Charles Garland?

By a process of inclusion and exclusion, we reach the conclusion that he intended to exclude George Smith, the defendant, because he expressly limits the first remainder to the issue, the heirs of the body of his wife, and upon failure of such living heirs at her death, then to the heirs of Charles Garland. It is also obvious that he had in view a provision for the benefit of his wife, and lest misfortune should overtake her he gave her the power to sell, mortgage, incumber or otherwise dispose of the home to raise funds for her support.

Counsel for defendant states the purpose of James Smith thus: "The reasons which, according to Mrs. James Smith,

induced him to execute this deed of trust, were that he was actively engaged in business, was a director in the Boatmens' Savings Institution, and had become a surety for his friends on many bonds and other obligations, and he wished to settle the homestead property in trust for his wife, while he was yet in a solvent condition."

While this is a fair statement of the evidence as far as it goes, Mr. Filley adds that he said "he wished to have the prop- erty held in trust for Mrs. Smith and her heirs."

We think, that, to properly construe the power of appoint- ment, not only the words of the deed must be looked to, but the circumstances surrounding the grantor and the fact that a remainder had been created for the heirs of Charles Garland.

When this is done it seems to us that the construction which most harmonizes with the intention of the grantor, and at the same time subserves and preserves the rights of all the objects of his bounty, is that the power of appointment was appendant to Mrs. Smith's life estate, thereby enabling her in the event of his insolvency to sell the property or mortgage or incumber it for her support, but it was not his intention to per- mit her to give it away and thus possibly leave her homeless in her old age, nor to permit her to give it away to the destruction of the remainder he had granted to the heirs of Charles Gar- land.

It is suggested, however, that Mrs. Smith might have, under this power, sold the land for a valuable consideration and given the proceeds to defendant George Smith, her adopted son. If this be conceded, still it does not meet the contention that she had no power to give away *this property* under the terms of this deed. In addition to the authorities cited in Price v. Court- ney, 87 Mo. 387, we regard the decision in Ferry v. Laible, 31 N. J. Eq. 566, as greatly strengthening the view of this court in Price v. Courtney. In that case it was held that the rule was

well established that "when one of several methods of executing a power is clearly prescribed by the language of the power, the donee is not at liberty to adopt another, for, by prescribing one the others are negatived."

But again it is asserted that the phrase "or otherwise dispose of" was sufficient to confer an absolute and untrammeled power of disposition even if the words "sell, mortgage and incumber" were not sufficient to authorize a gift of the lot to defendant.    On the other hand, plaintiff maintains that such general words as these, used as they are after specific terms, must be confined to things *ejusdem generis* with those preceding them.    We are quite clear that the phrase referred to did not enlarge the power of appointment so as to include a gift of this property.

In County of Johnson v. Wood, 84 Mo. loc. cit. 509, it was ruled that "a general sweeping clause in a deed which is indefiite in its character will be restricted and limited to estates and things of the same nature and description as those previously mentioned."    We hold that a voluntary gift of this lot was not authorized by the power conferred upon Mrs. Smith and defendant was chargeable with notice of her want of power to give him the lot and that therefore he took no title by the deed of June 26, 1888.    [Flemming v. Mills, 182 Ill. 464; Sires v. Sires, 43 So. Car. 266; Young v. Ins. Co., 101 Tenn. 311; Robeson v. Shotwell, 55 N. J. Eq. 318; Price v. Bassett, 168 Mass. 598.]

In the execution of the power of appointment, Mrs. Smith was merely the instrument of her husband, James Smith, and if the defendant obtained title by her deed he would be in by virtue of the deed of James Smith, and when we consider the apparently sedulous care exercised by James Smith to prevent such a consummation, to hold said deed a valid execution of the

power so carefully framed would be a plain perversion of his intention in executing it.

Nothing herein said conflicts with the rule long ago announced by this court in Kimm v. Weippert, 46 Mo. 536, that where the separate estate of a married woman amounts to an equitable fee she is not limited in her manner of disposing of it because as to such property she is a *femme sole*. We are dealing with her power at this time, to disregard the mode of disposal in respect to an estate which may come into existence after her life estate and her power to cut off the same entirely by disregarding the powers conferred on her to dispose of the same, and in such cases she is required to conform strictly to the directions of the deed.

But notwithstanding the deed of 1888 was void, counsel insists that the appointment by the last will of Mrs. Smith was a due execution of her power, and if no other conveyance had been made this alone would have sufficed to convey the title to defendant to this lot.

We have carefully considered the argument of counsel for defendant, that Mrs. Smith's will was a valid exercise of her power of appointment, but we can not agree with him. On the contrary, the same considerations which induce us to hold that the deed of 1888 was invalid because the trust deed did not authorize a gift of this property but contemplated a sale or mortgage for a valuable consideration as contradistinguished from a good consideration only, one based upon love and affection simply, compel us to hold that her disposition by will was alike ineffectual to pass the title, because not within the purposes for which the power was created. In this view the form of the conveyance is a subordinate consideration. As already said, in our opinion, James Smith contemplated conveyances for value and intended to exclude George Smith from sharing in his bounty or provision for his wife and her heirs.

It seems to us that he also intended that she should convey, if at all, during her life for her own benefit, and the fact that he required the trustee to execute such writings as would perfect her sale or mortgage of this property indicate that he intended such sale or mortgage for her benefit. Drawn as this instrument was by an expert lawyer, it is extremely significant that it nowhere empowers her to dispose of the property by will, and when we remember that he had provided by the deed itself for the vesting of the property after his wife's death without a valid execution for the purposes he had in view, to-wit, providing for her comfort during her life, it seems clear he did not intend to confer the power to will it away and cut off the remaindermen.

The probabilities were so strong at that time that Mrs. Smith would never have heirs of her body, that it can readily be seen why James Smith was carefully providing for those whom he had selected as remaindermen to take this property.

As Mrs. Smith, in her lifetime, did not sell, mortgage or otherwise incumber this property for value, we hold she did not exercise the power of appointment conferred on her by the deed of March 13, 1865, and as she died without issue, heirs of her body, the equitable use of this property passed under said deed to the heirs of Charles Garland, unless, as defendant insists, the title to this lot has been adjudged to belong to defendant in a suit or suits between plaintiff and defendant in a court or courts of competent jurisdiction.

The first suit which it is claimed had this effect, was brought by James S. Garland against Persis Smith and George Smith to re-establish his interest as trustee in the trust deed of April 28, 1881, by Persis Smith to George Smith, and James Smith Garland, whereby she conveyed to them all her property upon a declaration of trust and for certain uses, and another suit by the heirs at law of Charles Garland, including plaintiff

herein, against George Smith and the other collateral heirs of
Mrs. Persis Smith, to set aside a certain instrument purporting
to be a declaration of trust of date September 22, 1886, in favor
of George Smith and the heirs of John P. Garland and Benja-
min Garland.    Little difficulty arises as to the first-mentioned
suit.

Mrs. Persis Smith had made a trust deed, April 28, 1881,
wherein she nominated and appointed George Smith and James
S. Garland her trustees to manage certain properties of hers,
indeed all her property, in connection with herself.    Garland's
health broke down and he was taken to a sanitarium in one of
the eastern States.    While there he resigned his trusteeship.
In his suit to be restored to his position in that trust, he alleged
fraud and imposition in obtaining his resignation and asked a
decree setting aside his resignation and to restore him as trus-
tee. That suit was brought in the lifetime of Mrs. Persis Smith,
but before its determination, she died and a contest of her last
will was made in the circuit court of the city of St. Louis, and
resulted in a judgment in the circuit court establishing the will,
and that judgment was affirmed on appeal to this court.    In
that action the title to this property as between George Smith
and the heirs of Charles Garland was not in issue.    Mrs.
Smith was still living.    She had her life estate in the property
with the superadded power of appointment.    No one disputed
her life estate or power of appointment and in the very nature
of things her failure to exercise the power could not have arisen
and it did not arise in that suit.    Nor did this court, in the
will case or the equity case, undertake to adjudicate this title.

The matter in judgment was whether Persis Smith's will
had been obtained by undue influence, and, as her will only
affected her own property, we were not called upon to adjudge
what was her property.    As to her own property, she had the
right under her declaration of trust to devise it and we simply

held that her last will disposed of her property whether her trust deed did or did not. It is too clear for argument that that suit did not adjudge the question now before this court in this suit.

As to the other suit. It was a suit in equity by plaintiff and his brothers and sisters, the children of Charles Garland, to set aside the trust deed of Mrs. Persis Smith to George Smith of date September 22, 1886, and certain directions and appointments therewith. By that deed Persis Smith made George Smith the joint owner with herself of all her personal property and real estate. She recited therein that she had already conveyed him the property now in dispute by her deed of June, 1888. It was alleged in plaintiff's petition therein that said trust deed had been obtained from said Persis Smith at a time when she was not of sound mind and memory, and had been obtained by the power and undue influence, and deception practiced upon her by George Smith; that the defendants, George P. Garland, Elizabeth Bentley Garland, Emma Garland Dale, Lydia Jane Wisher, Persis Jane Garland, Elizabeth Garland, James M. Garland, and Amelia Mantels had an interest in the subject-matter of that action by reason that they are named in said instructions as persons to whom said George Smith should pay certain specific sums out of the property described in said declaration of trust, and the prayer was that the said declaration of trust of September 22, 1886, should be decreed not the free act and deed of Persis Smith.

Neither in the pleadings nor the evidence in that case was any mention made of the failure of Mrs. Smith to exercise her power of appointment over the lot in suit which had been limited to her for life and remainder to the heirs of Charles Garland. At that time her power to appoint during her life in accordance with the purposes of the deed was not and could not be disputed by the remaindermen, and when she died it was

held unimportant to pass at length upon the allegations of undue influence because Mrs. Persis Smith in her own conveyance reserved the right to will her property and as she had made a will and that will was sustained, it was a useless work to inquire in the equity case into the alleged undue influence, as whatever might result therefrom, her last will which she had a right to make had been held free from undue influence, and that will passed her property without reference to the declaration of trust.

But that equity suit was to divest defendant of the property belonging to Mrs. Smith and had naught to do with her husband's property which she had no power to will nor to give away so as to cut off the remaindermen. No inquiry into the execution of the power was before the court, nor would it have been relevant to the issues in that case. Indeed, the great effort of counsel for defendant is not to show that the deed of 1888 was directly attacked in that case, but he invokes the rule that those things which might have been adjudged are barred equally with those that were pleaded and in evidence.

Where the purpose and object of the former action are the same with the late action, it is not to be questioned that the judgment concludes everything which might have been brought forward, although not in fact pleaded or in evidence, but where the subsequent action is upon a different claim, the former judgment only bars those things which were in issue or included in the issue in the former action or suit, nor will the judgment bar another cause which might have been joined with the former cause of action but was not, and if different proofs are required to sustain two actions, the judgment in one is no bar to the other. [Cromwell v. County of Sac, 94 U. S. 351.]

The plaintiffs, by seeking to set aside the declaration of trust and by contesting the will of Mrs. Smith, sought only to affect the property which Mrs. Smith had a right to convey in

her own right.   We have already ruled that her deed of gift was not a valid exercise of her power to convey the lot in suit so as to cut off the remaindermen.   In the suit to set aside the declaration of 1886, no such issue was raised.   This deed we hold to be ineffectual without reference to the charges of incapacity and undue influence as to the declaration of trust.   And we are clear, that no such issue was raised in that suit, and no proofs offered to sustain such contention, but the evidence in this case would have been irrelevant, in that, and it results that the judgments in the two cases pleaded present no obstacle to plaintiff's recovery.

The judgment is affirmed.   *Burgess, C. J., Sherwood, Robinson, Brace, Marshall* and *Valliant, JJ.,* concur *in toto.*