## E. H. MILLER et al. v. CORDELIA LLOYD et al.; JAMES D. BUFTON et al., Appellants.

### Division One, June 4, 1918.

1. **EQUITABLE TITLE: Entries Prior to Patents: Issued After Suit Brought.** Entry vests the equitable title in the entryman, and such title is sufficient to support a suit to quiet title; and where patents issued after the suit was brought are not in the record, it will be assumed on appeal, in aid of the judgment based on them, that they were issued on entries properly made prior to the institution of the suit.

2. **ACCRETIONS: Saltatory: Intervening Creek.** If the accretions formed upon the old river bank and extended across in front of the mouth of a creek, they became at once a part of the land reaching the bank at that point, and a subsequent cutting by the creek of a channel through the accretions would not affect the title thereto; and if the evidence shows that in seasons of high water accretions would form along the old river bank, near and in front of the mouth of the creek, that the creek itself would be filled with silt for some distance back of its mouth, that as the high waters receded the creek would force its way through these accumulations, and that the deposits were made from the river bank outward, in the creek and on both sides of it, it cannot be ruled that the waters of the creek separated the accretions from the river bank.

3. **―――: Judgment: In Proportion to Frontage.** A judgment which awards accretions in proportion to the original river frontage prior to their formation, is in accord with well recognized legal principles.

Appeal from Clay Circuit Court.—*Hon. Frank P. Divelbiss*, Judge.

AFFIRMED.

*Martin E. Lawson, Ralph Hughes* and *John C. Grover* for appellants.

(1) A patent to land from the United States Government conveys title to the land only from the date of the issuance of the patent. Bagnell v. Broderick, 13 Peters, 450; Monson v. Simonson, 231 U. S. 347; Langdon v. Sherwood, 124 U. S. 83; Redfield v. Parks, 132 U. S. 245; Texas P. R. Co. v. Smith, 159 U. S. 68. (2) The rights of the parties to an action must be determined according to the facts existing at the time the action was commenced. The plaintiff must, therefore, recover, if at all, according to the status of his rights at the time of the commencement of the action. Tobin v. McCann, 17 Mo. App. 481; Weinwick v. Bender, 33 Mo. 80; Worth v. Springfield, 22 Mo. App. 17; American Bonding Co. v. Gibson Co., 145 Fed. 871. (3). Accretions are not saltatory, but must gradually and imperceptibly form themselves to the mainland, and the existence of an intermediate stream of water between the accretions and the mainland makes it impossible for the accretions to attach to the mainland. DeLassus v. Faherty, 164 Mo. 361; Crandall v. Smith, 134 Mo. 640; 1 Farnham on Waters, p. 328, par. 71a; Gould on Waters (3 Ed.), 313; Kinney on Irrigation and Water Rights, 929.

*Simrall & Simrall* and *Theodore Emerson* for respondents.

(1) There is nothing in the evidence involving the "saltatory doctrine of accretions" in this case, but this evidence shows that the creek flowed over the accretions, instead of the accretions jumping the creek, and the court properly refused the instruction asked by appellants. (2) That said instruction was properly

Miller v. Bufton.

refused because it would have deprived plaintiffs and other respondents of all their frontage and given some to an adjoining riparian owner, a result never allowed. Crandall v. Allen, 118 Mo. 403; see also Deerfield v. Arms, 48 Am. Dec. 277, 17 Pick. 41; Gray v. Deluce, 5 Cush. 9; Thornton v. Grant, 10 R. I. 487; Kehr v. Snyder, 114 Ill. 313; 1 Am. & Eng. Ency. Law (2 Ed.), p. 477; 29 Cyc. 350 (note); Manchester v. Iron Works, 13 R. I. 355. (3) The judgment correctly divides the accretions among the contiguous riparian owners, by dividing the new shore line in proportion to their respective rights in the old shore line and drawing lines from the points of division thus made, to the points at which the old shore line is intersected by the boundaries separating the proprietors. 29 Cyc. 353.

BLAIR, J.—This is a suit to quiet title. [Sec. 2535, R. S. 1909.] The dispute arises over accretions, and the attached plat presents the situation.

Miller v. Bufton.

It is admitted, subject to an objection to certain patents, that certain of the respondents own those portions of sections 30 and 31 which fronted on the old river bank as shown by the plat. It is also admitted that appellant Bufton owns those parts of sections 1 and 36, as shown by the plat, which fronted on the old river bank. That bank formerly extended from X through Y, A, B and F to Z. The new river front extends from X through D, C and E to Z. The accretions lie within these lines.

I.  The suit was begun in 1912.  On the trial patents issued in 1913 and 1914 were offered.  These patents cover the larger part of the lands claimed by respondents.  We understand it to be admitted that the patentees are persons whose title respondents have acquired by mesne conveyances.  The point made by appellants is that title had not emanated from the Government until the patents issued; that these did not issue until after suit brought; therefore, that the suit cannot be maintained.  The patents are not in the record.  Their recitals are binding on the Government and patentee.  They may have shown the patents were issued on entries properly made and prior to the institution of the suit.  In aid of the judgment, the patents being before the trial court and not before us, we so assume.  Such entry vests the equitable title in the entryman and such title is sufficient to support a suit under Section 2535.

**Prior Entries.**

II.  Formerly, Big Shoal Creek flowed into the river at the point marked "Y" on the plat.  The evidence tends to show that in seasons of high water accretions would form along the old river bank, near and in front of the mouth of this creek and that the creek itself would be filled with silt for some distance back of the mouth; that as the high waters receded the creek would force its way through these accumulations; sometimes in a short time and sometimes several weeks or months after the waters of the river receded; that the deposits were made from the river bank outward, in the creek and on both sides of it.  The trial court found these to be the true facts.  There was also evidence that the creek was always a running stream, except when and to the extent high water covered it; that at times it was almost inconsiderable in width and depth near the mouth, but that there was always a stream of some kind flowing into the river except as just stated.  Appellants' theory is that this stream at all times

**Accretions Over Mouth of Creek.**

separated the accretions in dispute from the land of respondents, and they invoke the doctrine that accretions are not saltatory, i. e., that they could not leap the creek. DeLassus v. Faherty, 164 Mo. l. c. 372, et seq. is relied upon. If appellants' theory of the facts is accepted that case supports the conclusion they draw. The same decision (l. c. 373, 374) justifies the judgment rendered if the facts are as the trial court found them. If the accretions formed upon the old river bank and extended across in front of the mouth of Shoal Creek they became at once a part of the land reaching the bank at that point. The subsequent cutting of a channel through the accretions formed would not affect the title thereto. This is held in DeLassus v. Faherty, and is sound law. In that case, as in this, any other judgment than that rendered would deprive respondents of all their river frontage. The judgment rendered gives them frontage and accretions proportioned to their original frontage prior to the formation of the accretions. This is in accord with well recognized principles. A judgment for appellants would extend their property "longitudinally down the river and between" respondents' land and the river. This does not appeal to the equities of the situation. The case was tried and is argued here as one at law. There is undoubtedly substantial evidence to support the finding of the trial court. If it be said the character of respondents' title transforms this into a suit in equity, we think proper deference to the finding of the chancellor requires us to say his finding must be upheld. This, because the evidence on the disputed question is well balanced and he was in better position to resolve the conflict.

III. Complaint is made of the refusal of an instruction. Though the case be treated as one at law this assignment must be overruled. Instructions given sufficiently covered the question involved. Affirmed. All concur.