## EX PARTE A. FRETELLIERE.

Applicant, a Frenchman by birth, immigrated to Texas in 1844 ; he made three visits to France, remaining there each time for one year. The last two visits he made as a French subject, under French passports. He has uniformly declared his intention, for many years back, long prior to 1858, of returning to France to live. In 1858, he left this country, with the intention of not returning. He had married in this country, and left his family here each time, he visited France ; he visited France the last time, for the purpose of preparing a home for his family ; he inherited valuable real estate in France from his mother ; he has purchased real estate in this country, and improved it ; he has been engaged in merchandizing, and other ordinary occupations of the country ; he has often expressed his anxious desire to return to France, when he could dispose of his effects ; he was never naturalized, though he has occasionally voted. In 1862, applicant took the oath of alienage before a Provost Marshal, and had his name registered at the office of the vice consulate of France, as a French subject. Writ issued December 16th, 1864. *Held*, that the facts are sufficient to establish the domicil of the applicant in this country.

A party having once acquired a domicil in this country, retains it, as against the domicil of origin, until he not only intends to change it, but until he actually does change it, by a removal, or at least a commencement to remove, which leaves no doubt of the intention, and of its being then carried out, by an actual departure from this country to the country of his original domicil.

The intention of a party to return to the domicil of his origin, after having once acquired another domicil, however strong, and whatever preparations he may make in offering his property for sale, and winding up his business, is not sufficient to change the acquired domicil : the change is consummated only by the concurrence of the intention, and the act.

In 1863, F. Guilbeau, the vice consul of France, at San Antonio, entrusted the business of his vice consulate to applicant, and left this country for France. Since then applicant has exercised the duties of vice consul only in one in-

stance, in making a certificate to be used in France. On the 16th of November, 1864, the acting consul of France, in New Orleans, addressed a letter to applicant, accepting his assistance in giving information, &c. A. Superville, a native of France, claiming to be acquainted with the French laws, and especially with those relating to consular organization, testified, that, under the French laws, a consular agent or vice consul, being himself a deputy, cannot appoint any one to act in his place, or transfer his authority. *Held,* that applicant is merely assisting an acting consul of France in New Orleans, and cannot be regarded as a consul of a foreign power, nor embraced within the provisions of Gen. Order, No. 12, from the Bureau of Conscription, T. M. D., in reference to the exemption of consuls.

An order from the Bureau of Conscription, T. M. D., dated 1st day of June, 1864, directs that "consuls" of foreign nations, who might otherwise be liable, shall not be enrolled for service. The word "consuls" in this order, is used in its generic sense, and includes the different grades of such officers, whether they be consuls general, consuls, vice consuls, consular agents, or secretaries or students, when properly acting as consular agents.

The testimony of a person acquainted with foreign laws and customs, is admissible to prove the existence of such laws and customs.

Applicant received a certificate of permanent disability on the 29th day of March, 1864, from the Board of Examining Surgeons for the 1st Congressional District, which certificate was approved by the enrolling officer for said district. In the return of respondent, he claimed to hold applicant as a regularly enrolled conscript, liable to do military duty under the C. S. conscript laws. *Held,* that applicant must be discharged by virtue of said certificate of disability.

A certificate of permanent disability, given by a Board of Examining Surgeons, under the act of Congress, approved February 17th, 1864, and in pursuance of the instructions of the A. & I. G., Richmond, of the 11th of March, 1864, is not final in the sense of preventing the officers of conscription, under the regulations prescribed for their action, from again having the party examined, from time to time, to ascertain whether or not the disability has continued, and if found fit for duty, from having him enrolled and assigned to such duty; such a certificate is final, so as to preclude any exercise of authority over the person holding it, by the officers of conscription, until the Bureau of Conscription shall have issued an order directing a re-examination, and under such order a different determination of a Board of Examining Surgeons shall have annulled his exemption.

Appeal from the Judgment of the Hon. JOHN H. DUNCAN, Judge of the 4th District, sitting in Chambers, at San Antonio.

*I. A. & Geo. W. Paschal,* for appellant:

*Attorney General,* for appellee.

ROBERTS, C. J., delivered the opinion of the Court.

Judgment reversed, and applicant discharged.

MOORE, J., did not sit in this case.