## JOHANNA WITTE, Appellant, v. JOHN F. STORM et al.

Division One, July 12, 1911.

1. **AGENT: Acquiring Adversely to Principal.** An agent is prohibited from acquiring, to the prejudice of his principal, directly or indirectly, any interest in property which is the subject-matter of his agency.

2. **TRIAL THEORY OF CASE: Gleaned from Record.** It is from the record as made that the Supreme Court must reach its conclusions as to the theory on which a case was tried, and to overthrow a contention of counsel as to that theory it is enough that the pleadings and the evidence disclose the contrary.

3. **FRAUD: Sale Under Deed of Trust: Agency: Termination.**
Appellant made defendant her agent to handle her property.
According to agreement the property was sold under existing
deeds of trust and title taken, at defendant's instance, in the
name of defendant's confidential clerk. This clerk then exe-
cuted a trust deed to defendant at defendant's instance. The
property was afterwards sold under this deed of trust and
bought in by another person for defendant, this last fact being
concealed from appellant. *Held*, that such sale did not termi-
nate defendant's agency nor the trust relation existing through
the employment of the confidential clerk to hold the legal title
for appellant's use.

4. **AGENCY: Renunciation: Adverse Interest: Trust.** Before an
agent can be permitted to acquire an interest adverse to his
principal in the subject-matter of his agency, there must have
been a previous unequivocal and absolute renunciation of the
agency. Where a renunciation was made simply for the pur-
pose of acquiring an interest in the principal's property, the
relation will continue, and the agent will be treated as a
trustee. Moreover, in the case under review the nature of the
agency precluded any revocation until the subject-matter was
restored as far as possible to the principal.

5. **FRAUD: Agency: Adverse Interest: Clandestine Purchase:
Trust.** The clandestine purchase by an agent of the subject-
matter of the agency raises a trust in favor of the principal
which carries with it all the obligations previously existing
between the parties.

6. ———: ———: ———: **Trust.** Where an agent has taken
in the name of his confidential clerk the legal title to his
principal's property for the admitted purpose of so managing
it as to pay off all liens, he cannot purchase the equitable
title arising from a sale under a judgment against the property
which existed of record when the agreement of agency was
formed, and then, having added such equitable title to the legal
title held in trust, deny that the trust traveled with the whole.
The legal title being strengthened in the agent's hands, the
principal's equitable title is further fortified.

7. ———: ———: ———: **Agent's Own Funds.** An agent
cannot acquire his principal's property by using his own funds
to make what is in effect a redemption of the subject-matter
of the agency.

8. ———: ———: ———: **Ejectment: Res Judicata.** Judg-
ments in ejectment avail but little as bases for the plea of *res
judicata*, and a judgment in ejectment obtained by a trusted
agent through fraud upon his principal, involving the very
property that is the subject-matter of his agency, is worthless
for such purpose.

Witte v. Storm.

9. ——: ——: ——: ——: **Equitable Defense.** A defendant in an action at law who has knowledge of fraud available as a defense, is entitled to let the judgment go at law and then institute his suit in equity.

10. ——: ——: ——: **Trust: Denial of Original Interest.** It does not lie in the mouths of those who are both agents and trustees, to accept and administer the trust, and, when called upon to account, deny the original interest of their principal and *cestui que trust* in the title of the property confided to their keeping.

11. **LACHES: Notice.** Laches cannot be imputed save when delay is united with notice, actual or constructive, and this is especially pertinent when the intentional concealment of the facts constitutes part of the fraud giving rise to the cause of action to which the defense of laches is urged as a bar. Further, there must be evidence that the situation of the parties with respect to the property in suit has been changed.

12. **APPEAL: Reopening Case in Equity: Stated Accounts.** Statements by an agent which amount to nothing more than information furnished the principal of the manner in which said agent was using the principal's funds in accomplishment of the purpose of the agency, cannot be relied upon as stated accounts and as a bar to the re-examination and reopening of an equity case in the Supreme Court.

13. **TRUST: Purchasers in Good Faith.** The trust follows the trust estate into the hands of all save those who purchase in good faith, for a valuable consideration and without notice. And as far as the trust follows the property, so far will equity follow the trust, retake the trust estate, and restore it to its rightful owner.

14. ——: ——: **Corporate Grantees.** Purchasers of a trust estate, in good faith, for a valuable consideration and without notice, the trustee being in actual possession of the estate and empowered to sell, take good title against the *cestui que trust;* and these principles are as applicable to corporate grantees as to others.

15. **QUITCLAIM: Prior Equities.** Title in the hands of grantees by quitclaim deeds is subject to the equities with which it was impressed in the hands of their grantors.

16. **PRINCIPAL AND AGENT: Fraud: Commissions.** An agent who has been guilty of fraud in the transaction of his principal's business, forfeits his rights to commissions as such agent.

Appeal from St. Louis City Circuit Court.—*Hon. Jesse A. McDonald,* Judge.

REVERSED AND REMANDED (*with directions*).

*Seneca N. Taylor* and *A. A. Paxson* for appellant.

(1) Plaintiff has not in any sense of the word ever had an accounting. Storm's own letters show that he was still acting under the powers of attorney at a date subsequent to the date of the alleged statement rendered. Besides that statement was objected to and never assented to by plaintiff or her attorney, but they both repudiated it as inaccurate. Again, it would not bind the plaintiff, because she had been and was at the time deceived as to the title. (2) Storm's sale of the property as trustee under the $2000 deed of trust to Kehoe, who, as it turns out, was acting for Storm, was absolutely void. A trustee can not buy at his own sale or speculate with the trust property. Harrison v. Craven, 188 Mo. 591; Newton v. Rabeneck, 90 Mo. App. 672; Newman v. Newman, 152 Mo. 398; Tuggles v. Callison, 143 Mo. 536; Stitt v. Stitt, 205 Mo. 166; Van Raalte v. Epstein, 202 Mo. 173; 1 Am. & Eng Ency. Law (2 Ed.), 1071; Barthelmew v. Leech, 7 Watts, 472; Thornton v. Irwin, 43 Mo. 163; Boardman v. Florez, 47 Mo. 562; Fov v. Mackreth, 2 Broc. 400; Marshall v. Ferguson, 94 Mo. App. 175; Palmer v. Pirson, 24 N. Y. Supp. 333; Stewart v. Ranch Co., 128 U. S. 388; Davis v. Kline, 96 Mo. 401; Grumley v. Webb, 44 Mo. 431; Lass v. Sternberg, 50 Mo. 124; Gaines v. Allen, 58 Mo. 537; Darling v. Potts, 118 Mo. 507. (3) The judgment in the ejectment suit is not *res adjudicata,* nor an estoppel by record, in this case. The plaintiff in that case was Storm under Kehoe's name. The situation and condition of neither party has been changed thereby to his or her prejudice or detriment. Speed v. Railroad, 163 Mo. 123; Barkhoefer v. Barkhoefer, 93 Mo. App. 381; Winham v. Kline, 77 Mo. App. 36; Garland v. Smith, 164 Mo. 1; Overshimer v. Brit-

ton, 169 Mo. 341; Johnson v. Stebbins, 177 Mo. 581; Rodney v. Gibbs, 184 Mo. 1; Calvert v. Hoobs, 107 Mo. App. 7; Davidson v. Mayhew, 169 Mo. 258; Patillo v. Martin, 107 Mo. App. 653. (4) The proceedings of sale under the Leonori judgment can not be invoked by the defendants to their gain in this case. They were instructed by the plaintiff, when the powers of attorney were given, to pay that judgment out of the first money they obtained, and it was defendant's duty to have done so. Not only so, but at the sale under the Leonori judgment the property was struck off to R. J. Delano, and by Delano conveyed to N. B. Hatcher, January 23, 1899, and on the same day conveyed by said Hatcher to Frank P. Storm, who was only a straw man for Storm & Farish, and Frank P. Storm on the 18th day of March, 1901, conveyed said property to Edward H. Brockmeyer. Therefore, if any title passed under the Leonori judgment sale to Delano, whatever that title, was finally culminated in Edward H. Brockmeyer on the 18th day of March, 1901. Brockmeyer was simply the bookkeeper of Storm & Farish, and never had any beneficial interest in any of this property. Whenever there was a holding in Brockmeyer's name of this property, such holding was for the use and benefit of plaintiff. (5) Plaintiff explains her reason for delay: She had no funds with which to institute proceedings to vindicate her rights; and the situation of none of the parties to this suit is in any way changed to his or her detriment by the delay. Sicher v. Rambousik, 193 Mo. 129; Lipscomb v. Adams, 193 Mo. 531; Newman v. Newman, 152 Mo. 398; Lindell Co. v. Lindell, 142 Mo. 78. (6) A broker who is guilty of fraud or gross negligence in his dealings with his principal, and who knowingly renders false and fraudulent accounts; or who neglects to keep true and correct books, and accounts of his transactions; or who, having sold the goods, converts the

money to his own use; or who violates his instructions in regard to the same forfeits his commissions and may be held liable to compensate his principal for the loss and injury sustained. Mechem on Agency, sec. 1027; Brennen v. Strauss, 76 Ill. 234; Norman v. Pepper, 24 Fed. 403; Fordyce v. Pepper, 16 Fed. 516; Talcott v. Chew, 27 Fed. 273; Dodge v. Killotson, 12 Pick. (Mass.) 328; Seeger v. Parish, 20 Gratt. (Va.) 672; Kilpatrick v. Wiley, 197 Mo. 169; Harrison v. Craven, 188 Mo. 592; Gibson v. Bailey, 114 Mo. App. 350; Dennison v. Aldrich, 114 Mo. App. 701; 12 Am. & Eng. Ency. Law (2 Ed.), 671; 1 Am. & Eng. Ency. Law (2 Ed.), 671; Broch v. Hart Co., 57 Mo. App. 610; Smith v. Crews, 2 Mo. App. 269. (7) If the principal, in order to secure his claim against the broker, is compelled to resort to litigation, the broker will not be allowed any commissions. Mechem on Agency, sec. 1027; Vennum v. Gregory, 21 Iowa, 326; Van Raalte v. Epstein, 202 Mo. 173, 196; Harrison v. Craven, 188 Mo. 592; Gibson v. Bailey, 114 Mo. App. 350; Dennison v. Aldrich, 114 Mo. App. 701. (8) The record facts are of such a character as to destroy any right in the defendants for compensation for their services. Agents who act in bad faith with their principal are not entitled to compensation or commissions. Harrison v. Cramer, 188 Mo. 610; Paul v. Mach. Co., 87 Mo. App. 654; Schaefer v. Blair, 149 U. S. 248; Wadsworth v. Adams, 138 U. S. 380; Sea v. Carpenter, 160 U. S. 412; Vennum v. Gregory, 21 Ia. 326; Sumner v. Reicheniche, 9 Kas. 320; Porter v. Silvers, 25 Ind. 395; Fordyce v. Pepper, 16 Fed. 516. (9) "To support the plea of a stated account so as to conclude the parties in relation to all the dealing between them, the accounting must be shown to have been final. Hence the binding force of an account stated will not be given to the mere furnishing of an account or other transaction which was not with a view to asserting a claim, estab-

lishing a balance due, or finally adjusting the matters of account between the parties." 1 Cyc. 366-367; Brown v. Kimmel, 67 Mo. 430; Powell v. Railroad, 65 Mo. 658; Railroad v. Com. Co., 71 Mo. App. 299; McCormick v. Sawyer, 104 Mo. 36; McKeen v. Bank, 74 Mo. App. 281; Wind v. Bank, 39 Mo. App. 72.   (10)   "An acount stated must be made with knowledge or with opportunity of knowledge on the part of the debtor of all the circumstances, and the rule that retaining an account without objection makes an account stated cannot be applied to cases in which the party to whom the account is rendered has no knowledge of his own interests in the matters contained in the account.   So, where a party renders an account under a mistake of facts, it is held that the rule that acquiescence in an account rendered will make it an account stated does not apply."   1 Cyc. 382, 383.   The allegation in the answer is not sufficient to base the claim or defense of "account stated."   1 Cyc. 389.   "A former settlement is no bar to an action for account unless fully and fairly made."   Alexander v. Solomon, 15 S. W. 906; Story Eq. Jur., secs. 465, 1277c, 468; In re Hayter, 32 W. R. 26, 16-8; Hilliard v. Talford, 4 C. D. 389; 1 Perry on Trusts, (5 Ed.), sec. 229; Michond v. Girod, 4 How. 561; Trevelyan v. Charter, 11 Cl. & Fin. 714; Pyrn v. Byrne, 5 Ves. 681; Maloney v. L'Estrange, Beat. 406; Carpenter v. Canal Co., 35 Ohio St. 307; Prevost v. Gratz, 6 Wheat. 481; Morse v. Hill, 136 Mass. 60.   (11)   Defendants should be charged with compound interest, with annual rents, for the rents collected from the Jefferson avenue property, which ought to have been turned over to plaintiff.   Cruce v. Cruce, 81 Mo. 686; Bobbs v. Bobbs, 89 Mo. 421; 1 Perry on Trusts, sec. 471; In re Murdock & Dickson, 129 Mo. 499; Pullis v. Sommerville, 218 Mo. 639.   (12)   On an appeal from a decree in equity, it is the duty of the appellate court to consider all the evidence and apply the law

thereto. It is a trial *de novo*. Robertson v. Shepperd, 165 Mo. 360; Sheridan v. Nation, 159 Mo. 27; Dunivan v. Dunivan, 157 Mo. 157; Hoeller v. Haffner, 155 Mo. 597; Hall v. Harris, 145 Mo. 620; Lins v. Leonhardt, 127 Mo. 271; Van Franck v. Road Co., 89 Mo. App. 460; Trimble v. Wollman, 62 Mo. App. 548; Gunby v. Rogers, 42 Mo. App. 465; Nichols v. Nichols, 39 Mo. App. 293. (13) The appellate court will defer considerably to the findings of the trial court where the evidence is oral, and the case had been decided promptly after the evidence is introduced; but not so where the case has been held up for many months after the evidence is concluded. Meyers v. Schuchmann, 182 Mo. 177; Kinney v. Murray, 170 Mo. 707; Becht v. Becht, 168 Mo. 525; Garter v. Dilly, 167 Mo. 564; Hoeller v. Haffner, 155 Mo. 589; Strine v. Williams, 159 Mo. 582, 585.

*Jones, Jones, Hocker & Davis* for respondents.

(1) While on appeal cases in equity are considered substantially *de novo,* at the same time the appellate courts will greatly defer to the conclusions reached by the trial court and will not disturb its findings unless they are manifestly wrong. Becht v. Becht, 168 Mo. 528; Chance v. Jennings, 159 Mo. 560; Dennison v. Dennison, 157 Mo. 160; Durlings v. Potts, 118 Mo. 530; Johnson v. Duer, 115 Mo. 375; Barlow v. Elliott, 56 Mo. App. 378. (2) A cause must be disposed of on appeal upon the same theory as that assumed at the trial by the parties. Benton Co. v. Zeitler, 182 Mo. 265; B. & L. Assn. v. Obert, 169 Mo. 507; Kilpatrick v. Wiley, 197 Mo. 171; Williams v. Lobban, 206 Mo. 487; St. Louis v. Wright, 210 Mo. 491; Mitchell v. Railroad, 125 Mo. App. 11; Bank v. Zook, 133 Mo. App. 604. (3) An agent may renounce his agency at any time where the agency is indefinite in duration, even if he has "not accomplished prosperously what he has undertaken." The agent's reasons

for termination of the agency are of no consequence. It may either be because he is unable to accomplish the purpose of the agency or because of the conduct of his principal. It is sufficient if he gives notice. Duffield v. Michaels, 97 Fed. 825; Mechem on Agency, sec. 233; Tiffany on Agency, sec. 33; Barrows v. Bushway, 37 Mich. 481; U. S. v. Jarvis, Davis (U. S. D. C.) 274; 31 Cyc. Law and Proc. 1306; Hitchcock v. Kelly, 18 Ohio C. C. 808; Convey v. Brandgee, 2 La. Ann. 132; E. and C. L. and P., 1256. (4) (a) No doctrine of equity is better settled than that a stated account is a good defense to an action for an accounting. 1 Ency. L. & P. 749; 1 Cyc. 443; Green v. Harris, 9 R. I. 408; Suttle v. Doggett, 87 N. C. 205; Stiles v. Brown, 1 Gill 350; Brown v. Vandyke, 55 Am. Dec. (N. J.) 250; Harrison v. Farrington, 40 N. J. Eq. 356; Craig v. McKinney, 72 Ill. 305; Driggs v. Garretson, 25 N. J. Eq. 179; Weed v. Small, 7 Paige (N. Y.) 573. (b) An account and vouchers rendered may become an account stated by acquiescense, either express or implied from lapse of time or the conduct of the parties. 1 Ency. L. & P. 693, 698; Story Eq. Jur., sec. 526; Freeman v. Howell, 50 Am. Dec. 562; Powell v. Railway, 65 Mo. 658; Brown v. Kimmel, 67 Mo. 430; Shepard v. Bank, 15 Mo. 143; Bank v. Morgan, 117 U. S. 106; McCormick v. Sawyer, 104 Mo. 43; McKeen v. Bank, 74 Mo. App. 288; Spellman v. Muehfals, 166 N. Y. 249; Sutcher v. Eells, 108 Ill. App. 156; Seinbach v. Wolle, 211 Pa. St. 629. (5) Under the Missouri statutes an execution sale under a judgment rendered by a justice of the peace, the transcript of which has been filed in the circuit court, carries with it all title, legal and equitable, of the judgment debtor which such debtor had at the time of the filing of the transcript or which he acquired before the date of the execution sale. R. S. 1909, secs. 2124, 2125, 2161, 2192, 7528; Williams v. Lobban, 206 Mo. 410; Slattery v. Jones, 96 Mo. 216; Eneberg v.

Carter, 96 Mo. 650. (6) There can be no trust without a *res*. "The very term 'trust' implies an estate in the trustee. . . . A trust is a relation between two persons by virtue of which one of them (the trustee) owns property for the benefit of the other (*cestui que trust*)." Corby v. Corby, 85 Mo. 371; Taylor v. Mayo, 110 U. S. 165; 28 A. & E. Ency., 858, 859, 866; 13 Laws of England, p. 89; Smullin v. Wharton, 73 Neb. 683. (7) After the relation between the principal and the agent is fully terminated all duty of the latter to the former ends and the agent may become the purchaser from a third person of the property of his former principal; the disabilities of the agent arise out of the relation and case with it. 2 Ency. L. and P., 1054; McGinley v. Irwin, 13 Ala. 681; Smith v. Tyler, 57 Mo. App. 668; Dennison v. Aldridge, 114 Mo. App. 709; 1 Clark & Skyles, Law of Agency, sec. 413, p. 929; McGar v. Adams, 65 Ala. 106; Munn v. Burges, 70 Ill. 604; Bush v. Sherman, 80 Ill. 160; Walker v. Carrington, 74 Ill. 446; O'Reiley v. Bevington, 155 Mass. 72; Evans v. Evans, 196 Mo. 18; Boehlert v. McBride, 48 Mo. 505; Dry Goods Co. v. Gideon, 80 Mo. App. 609. (8) A constructive trustee may purchase the trust property at a sale brought about by a third party which he had no part in procuring and over which he could have had no control. Bruner v. Finley, 187 Pa. St. 389; Allen v. Gilette, 127 U. S. 589; Fisk v. Sarber, 6 W. and S. (Pa.) 18; Clark v. Holland, 72 Ia. 34; Harrison v. Mulvane, 62 Kan. 461; Reid v. Clendening, 193 Pa. St. 406; Evans v. Evans, 196 Mo. 23; Dillenger v. Kelly, 84 Mo. 561; Prevost v. Gratz, 11 Peters 378.

BLAIR, C.—In February, 1897, at the inception of the various transactions which resulted in this litigation, appellant was the owner of the equitable title to a tract of ground in the city of St. Louis at the intersection of Forest Park Boulevard and Kingshigh-

way, designated as the Kingshighway property, and certain lots, and improvements thereon, on Jefferson Avenue in the same city.

At the time mentioned deeds of trust executed by appellant and her husband on both these properties were about to be foreclosed, the total indebtedness of all kinds against both plots being $43,305. In her extremity appellant applied to respondents, John F. Storm and J. H. Farish, then partners in the real estate business, to assist her in devising a means to save the properties, and the upshot of her negotiations with them was that Storm and Farish undertook to manage the property for appellant, negotiate loans thereon sufficient to discharge all existing liens and indebtedness against the two tracts, and then to collect the rents on the Jefferson Avenue property to meet interest charges, taxes, etc., and to sell enough of the Kingshighway property to pay off all liens on both parcels so that, in the end, appellant would have left a part of the Kingshighway property, on which it appears she expected to reside, and the whole of the improved Jefferson Avenue property, unencumbered.

In order that Storm & Farish might carry out these plans, it was agreed that the sales under the existing deeds of trust were to be permitted to be made, and appellant executed a power of attorney authorizing Storm & Farish to negotiate new loans on the properties, from thirty to thirty-five thousand dollars on that on Kingshighway, and from ten to fourteen thousand dollars on that on Jefferson Avenue, as might be required. Storm & Farish were also authorized to "do any and all acts necessary in order to carry out the above instructions and perfect the title by the payment of any taxes or costs that may accrue."

On the same day, February 27, 1897, appellant also executed an instrument whereby she appointed

Storm & Farish her sole agents to collect rents and sell both the Kingshighway and Jefferson Avenue properties, fixing therein the minimum prices per front foot at which the several portions of the Kingshighway tract were to be sold, and leaving the selling price of the Jefferson Avenue property to be determined by subsequent agreement.

The Jefferson Avenue property was sold under deed of trust on March 1, 1897, and that on Kingshighway was similarly sold April 13, 1897, the title being taken, in both cases, at the instance of Storm & Farish, in the name of E. H. Brockmeyer, collector for that firm.

The purpose of this was to facilitate the transaction of the business which Storm & Farish had undertaken for appellant, and it is affirmed by all parties that Brockmeyer held the legal title at all times until May, 1898, for appellant.

A loan of eleven thousand dollars was negotiated on the Jefferson Avenue property, and one of thirty-one thousand five hundred dollars on that on Kingshighway, Brockmeyer in each instance executing deeds of trust to secure the loan. Brockmeyer then executed to Storm as trustee a deed of trust on both pieces of property, securing a note payable to Farish for two thousand dollars. . Appellant testified that she was assured that the execution of this last mentioned deed of trust was "a matter of form," and respondent Storm testified that it was executed to secure his firm for funds advanced by it in clearing up the indebtedness against the properties.

In 1896, one Leonori had obtained judgment against appellant and her husband for five hundred dollars. Appellant testified that she mentioned this judgment specifically in detailing the liens against the properties preparatory to the execution of the powers of attorney to Storm & Farish. This Storm denies.

236 Sup.—31

The rents of the Jefferson Avenue property amounted to about $1800 to $2000 per annum, according to Storm's testimony, and to about $2400 to $2500, according to appellant's.

In November, 1897, Brockmeyer conveyed to Richard D. Hatton a portion of the Kingshighway property, seventy feet fronting on Forest Park Boulevard, for an expressed consideration of one dollar, and January 19, 1898, Hatton conveyed this lot to John F. and Lizzie Storm. Hatton was, respondents Storm and Farish admit, a mere conduit and Storm was the real purchaser, paying for the lot sixty-five dollars per front foot, fifteen dollars per front foot less than the minimum price fixed by the power of attorney given his firm by appellant. In April, 1898, all the property was sold under the Leonori judgment, of the existence of which judgment Storm & Farish had been advised for over a year by the certificate of title used in procuring the loans in the spring of 1897, and the payment of which judgment they had guaranteed in writing April 16, 1897, to the St. Louis Trust Company, from which institution the $31,500 loan on the Kingshighway property was procured.

In May, 1898, the whole of the property in controversy was sold under the $2000 deed of trust above mentioned, the note secured thereby never having been negotiated by Storm & Farish, and C. J. Kehoe, the answer admits, bought at this sale for Storm. Farish was the payee in the note, and Storm as trustee in the deed of trust made the sale and executed the trustee's deed to Kehoe. Appellant was present at the sale but the fact that Kehoe was buying for Storm was concealed from her until after this suit was brought. Storm testified that he concealed this fact from her because he "did not want her to know it."

Immediately after this sale Storm, & Farish, wrote appellant as follows:

"The property has, as you are aware, been sold

under the second deed of trust, and the purchaser, Mr. C. J. Kehoe, has authorized us, by reason of our familiarity with the property, to continue to have charge of it, as his agents. We have gone over the matter fully with him, have explained the situation thoroughly, and have endeavored to impress him with your condition. That is to say, we have explained to him that you are not in a position to pay a rental that the Kingshighway property demands, and he had said to us that his idea is to make the rental nominal until such time as he may be able to find a purchaser.

He has further instructed us to say to you that for the months of June, July and August, he is willing that you should retain possession of the property, and probably longer, at a rental anywhere from one to five dollars a month. Of course, he could not treat you more leniently in the matter than by a proposition of this kind.

He also stated that one of his reasons for so doing was that you would use your best efforts in showing the property and endeavoring to find a purchaser. Mr. Kehoe has vested us with full authority to act for him, and we would be very much pleased to have you call at the office at your very earliest convenience, and see our Mr. Storm, in reference to this matter.

Anticipating an early visit, we remain,

Yours very respectfully.''

In a short time Storm, after failing in his efforts to induce appellant to attorn to Kehoe, instituted, in Kehoe's name, a suit in ejectment against appellant, and prosecuted it to judgment, thereby securing in May, 1899, possession of all the property.

Whatever title passed by the sale under the Leonori judgment was conveyed March 18, 1901, to Brockmeyer for Storm & Farish. On the same day Kehoe executed a deed, to the same grantee, to all the property in controversy except fifty feet on Duncan Ave-

nue theretofore sold by Storm & Farish to respondent Lula Young.

In May, 1901, Brockmeyer conveyed to Eda K. Meyer all of the Kingshighway property except the lots sold to Mrs. Young and that which Storm sold to Hatton for himself. Storm organized the Storm Real Estate Company, of the capital stock of which he owns all save two shares, and two of his sons own one share each. The Jefferson Avenue property was conveyed to this corporation and the title now stands in its name. The title to the seventy-foot lot on Forest Park Boulevard is now in the name of Frank P. Storm, son of John F. Storm, and clerk and bookkeeper for Storm & Farish during these transactions, having been conveyed to him by the Storm Real Estate Company in 1904 for a recited consideration of $5, to which company it had been conveyed by Brockmeyer in 1903.

Frank P. Storm paid nothing for the lot, John F. Storm having furnished the money therefor, and Frank P. has no beneficial interest in it. Brockmeyer acted at all times under the direction of Storm and Farish and at no time claimed any interest in any of the property, the legal title to which was taken in his name merely to facilitate the performance by Storm and Farish of their duties as appellant's agents.

The evidence discloses, and appellant concedes, that Lula Young and Eda K. Meyer purchased and paid for the portions of the Kingshighway tract which they acquired, without knowledge of appellant's interest or of any facts putting them on inquiry. They did not participate in or have any knowledge of the fraud practiced upon appellant, but purchased in good faith, for a valuable consideration and without notice.

There is practically no controversy as to the principal facts in the case. Other facts necessary to a determination of the cause will be mentioned in the course of the opinion.

## OPINION.

Advanced in years, unable to read or write the language in which her business must be transacted, deprived, by reason of his insanity, of the aid and counsel of her husband, overwhelmed by the apparent imminence of the loss of all her property, appellant, in her extremity, applied to Storm & Farish to extricate her from her financial difficulties.

Under these conditions Storm & Farish undertook the management of appellant's affairs and properties, the ultimate object of their agency being to pay off all liens against both tracts out of the proceeds of sales of parts of the Kingshighway block, so that appellant would, in the end, come into the enjoyment of the residue of that block and the whole of the Jefferson Avenue property, unencumbered.

That Brockmeyer, at the instance of Storm & Farish, his employers, took title to the property as trustee for appellant is evidenced by express declarations, written and oral, of Storm and Farish and of Brockmeyer, testified to on the trial by Storm and Brockmeyer, conceded by Farish in his testimony, and not questioned in respondent's brief. That Brockmeyer took the title by direction of Storm & Farish and in all respects acted at their instance, under their guidance and as their *alter ego,* is undisputed and indisputable.

The net result of the numerous transactions and conveyances disclosed by this record is that Storm, the agent, now occupies the position with respect to the property in suit in which he undertook, as her agent, to place appellant, his principal.

Respondents' counsel do not controvert the familiar rule that an agent is wholly prohibited from acquiring, to the prejudice of his principal, directly or indirectly, any interest in property which is the subject-matter of his agency (Grumley v. Webb, 44 Mo.

444; Meek v. Hurst, 223 Mo. l. c. 698; Dodd v. Wakeman, 26 N. J. Eq. 484; Lytle v. Beveridge, 58 N. Y. l. c. 606; Van Epps v. Van Epps, 9 Paige's Ch. l. c. 241; Michoud v. Girod, 4 How. l. c. 554; Trice v. Comstock, 121 Fed. (C. C. A.) l. c. 623; but seek to avoid the force of this and cognate rules by contending (1) that this is a suit for an accounting simply, and, as such, was correctly decided below, (2) that the agency of Storm & Farish was terminated by the sale under the two thousand dollar "blanket" deed of trust, (3) that the title acquired by the Real Estate Company by *mesne* conveyances, under the execution sale under the Leonori judgment extinguished appellant's claim, (4) that the Statute of Limitations constitutes a valid defense and (5) that appellant has been guilty of laches.

As to the contention that this is a suit merely for an accounting, that it was tried on that theory and that course precludes the presentation and consideration of any other theory here, it will suffice to say that the pleadings and the evidence disclose the contrary. It is from the record as made that this court must reach its conclusions as to the theory on which the case was tried. As to rents, other receipts, and expenditures an accounting is involved, but simply as an incident to the main relief prayed. So much for the trial theory.

In considering the effect of the sale under the two thousand dollar deed of trust upon the agency of Storm & Farish, it is to be noted that this trust deed was executed by Brockmeyer, at the instance of Storm & Farish, to Storm as trustee for Farish; that Storm made the sale as trustee; that Kehoe bid in the property for Storm, and that Storm & Farish concealed from appellant this last mentioned fact. Nor did Storm content himself with mere silence, but deliberately deceived appellant by means of letters writ-

ten by him for the firm asserting Kehoe's ownership of the property.

Certainly Storm could not purchase at his own sale made in his capacity as trustee in the two thousand dollar deed of trust and hold the property so purchased against appellant who was the owner of the equitable title. Nor could he do by indirection what he might not directly do. The "trust was not advanced as between the parties by the sale" (Giraldin v. Howard, 103 Mo. l. c. 46; Reddick v. Gressman, 49 Mo. l. c. 392), and the relation of the parties was unchanged thereby. We are not impressed with the argument that this sale, though not changing the relation of the parties as fixed by the deed of trust itself, nevertheless terminated the agency of Storm & Farish and destroyed all rights of appellant dependent upon that relation and upon the trust relation arising out of the utilization by Storm & Farish of their employee and representative, Brockmeyer, as the depositary, for the purpose of facilitating the accomplishment by them of the objects of that agency, of the legal title for appellant's use.

Before an agent can be permitted to acquire an interest adverse to his principal in the subject-matter of his agency, there must have been a previous unequivocal and absolute renunciation of the agency. [Fountain Coal Co. v. Phelps, 95 Ind. l. c. 275; McMahon v. McGraw, 26 Wis. l. c. 623; Bowman v. Officer & Pussey, 53 Iowa, l. c. 642.]

The evidence in this case does not disclose any such renunciation brought home to appellant. The renunciation relied on here, construed in the light of Kehoe's purchase for Storm, was made "simply for the purpose of acquiring an interest in the principal's property; . . . such relation will be deemed to continue, and such agent treated as a trustee." [Fountain Coal Co. v. Phelps, supra.]

In addition, by the very arrangement which invested Storm & Farish with the character of appellant's agents, they obtained, in effect, through Brockmeyer, the title to all her property and took into their hands all her sources of income. The very nature of their agency, under the circumstances of this case, precluded their renunciation of it until they restored to her the subject-matter of it, in so far as they were able, to the end that she might have some opportunity to protect her interests. We have no difficulty in concluding that the sale under the two thousand dollar deed of trust in no way relieved Storm & Farish of the burden they assumed when they accepted the agency for appellant's properties, and took over in Brockmeyer's name the legal title thereto. They occupied a dual relation to appellant. They were her agents by force of the powers of attorney and the contemporaneous oral agreement, and they were, in effect, trustees for her by reason of their holding and controlling, in the name of their confidential clerk, Brockmeyer, the title to her property. Even could it be said that the sale terminated the agency, the purchase at that sale by Storm, through Kehoe, raised a trust in favor of appellant which carried with it all the obligations which previously sprung from either the agency or the trust which arose from taking title in Brockmeyer's name.

Nor can it be held otherwise than that whatever title may have been acquired by the purchase of the interest conveyed by the sale under the Leonori judgment accrued to appellant's benefit and further fortified her equitable title by strengthening, in the hands of her trustee, the legal title to the properties. [Quackenbush v. Leonard, 9 Paige's Ch. l. c. 344; Ringo v. Binns, 10 Pet. l. c. 281.]

Some effort is made to contend that the Leonori judgment was not mentioned by appellant in her preliminary negotiations with Storm & Farish and that,

therefore, they might purchase under that sale and under that purchase hold adversely to appellant.

The evidence discloses beyond a reasonable doubt, and Storm in his testimony admits, that the purpose of the agency was to so manage the properties as to pay off *all* liens of every kind. The Leonori judgment has already been rendered and was then a public record. In addition, in procuring the loans on the Kingshighway property, Storm & Farish guaranteed the St. Louis Trust Co., in writing, dated April 16, 1897, against loss by reason of this identical judgment. Further, the sale under the Leonori judgment could not have conveyed the legal title which was in Brockmeyer's name and under the control of Storm & Farish. Appellant was still in possession of the property. With the knowledge they possessed and in the position they occupied, Storm & Farish could not violate their agreement to protect the properties from the Leonori judgment, permit the sale thereunder to be made and then by purchase of the title so conveyed add to the legal title held in trust by them the equitable title they thus attempted to acquire and deny that the trust traveled with the whole. [Chaffin v. Hull, 49 Fed. l. c. 528; Newcomb v. Brooks, 16 West Va. 32; Ringo v. Binns, 10 Pet. l. c. 281.] Nor is it important out of whose funds the consideration was paid for the title conveyed under the judgment sale. "An agent cannot acquire his principal's property by using his own funds to make what was in effect a redemption of the subject-matter of the agency." [DeMallagh v. DeMallagh, 77 Cal. l. c. 128.]

Beyond all doubt the protection of the property from the lien of this judgment was one of the things which Storm & Farish undertook to accomplish, and under the principles applicable here respondents cannot be permitted to set up this title against appellant. [Rothwell v. Dewees, 2 Black 613.]

Neither can the judgment in ejectment obtained by Storm & Farish in the name of Kehoe avail to extinguish appellant's rights. The sale to Kehoe was a fraud upon her, and that fraud was concealed from her by her trusted agents. The action itself was a fraud upon her. It was calculated and doubtless designed to further convince appellant of the *bona fides* of Kehoe's purchase.

In truth, since Kehoe was a figurehead and held or attempted to hold for Storm, and since Storm was at all times trustee for appellant and held or controlled the title for her, the judgment in the ejectment suit, as between the parties to this, possesses exactly the same efficacy to bar appellant's present claim against Storm and Farish as it would have had had appellant been named in that case as both plaintiff and defendant.

Judgments in ejectment avail but little as a basis for a plea of *res adjudicata* (Davidson v. Mayhew, 169 Mo. l. c. 265; Garland v. Smith, 164 Mo. 1; Speed v. Railroad, 163 Mo. 111), and that referred to in this record is worthless for such purpose.

Appellant might, had she known of the fraud practiced upon her, have set up as a defense in the suit in ejectment the facts she now alleges as the basis of her cause of action, but she did not have knowledge of the fraud then and had she known of it was entitled to let the judgment go at law and then institute her suit in equity, as she has done. [23 Cyc. 1200; Clark v. Hindman, 46 Ore. l. c. 70; Lorraine v. Long, 6 Cal. 452.]

So far as concerns the averments of the answer and some observations in the briefs to the effect that appellant did not own the Jefferson Avenue property when she constituted Storm & Farish her agents to manage it for her, no such proof was made, but the contrary. Besides it does not lie in the mouth of agents and *trustees,* such as Storm & Farish early in

the history of these transactions became, to accept and administer, as they did, the trust and when called to account deny the original interest of their principal and *cestui que trust* in the title to the property she has confided to their keeping. [Perry on Trusts, secs. 260, 433.]

The Statute of Limitations has no place in this case. [R. S. 1909, secs. 1889 and 1894; Bent v. Priest, 86 Mo. l. c. 487.] Nor was appellant guilty of any laches. The facts were concealed from her and laches cannot be imputed save when delay is united with notice, actual or constructive (Butler v. Lawson, 72 Mo. l. c. 249, 250), and this observation is especially pertinent when the intentional concealment of the facts constitutes part of the fraud which gives rise to the cause of action to which the defense of laches is urged as a bar. Further, there is no evidence that the situation of the parties with respect to the property in suit has been changed.

In the consideration of this case the rule as to the deference to be paid to the finding of the chancellor has little part to play.

The principal facts upon which our decision rests are uncontroverted. All others which enter into the minor premises on which we base our conclusion are established by the evidence beyond question. Doubtless the learned chancellor gave, on the trial, a more attentive ear to counsel's contention that this was merely a suit for an accounting than we have been able to offer on the cold record here, and disposed of the case on that theory. In that case his decision involved no finding of fact, save one, which it is necessary for us to consider. The correctness of the statements furnished appellant by Storm & Farish showing the various amounts received and expended by them as her agents was not at any time conceded, but was denied by her. Nor do these statements purport to be final in their character, nor to cover any thing sub-

sequent to the sale to Kehoe for Storm. In addition, some of the items depended upon the validity of transactions which were frauds upon appellant's rights, of the fraudulent character of which she was kept in ignorance.

For these reasons these accounts cannot be relied upon as stated accounts (Powell v. Railroad, 65 Mo. l. c. 661) and as a bar to a re-examination and reopening of them in this case, even as to rents, etc., prior to May, 1898. They amounted to nothing more than information furnished appellant of the manner in which Storm & Farish were using her funds in furtherance of the accomplishment of the purpose of their agency.

As to the respondents other than Storm & Farish, it cannot be questioned that the trust follows the trust estate into the hands of all save those who purchase in good faith, for a valuable consideration and without notice (Coffee's Admr. v. Crouch, 28 Mo. 106; Paul v. Fulton, 25 Mo. l. c. 162; Darling v. Potts, 118 Mo. 506), nor that those who do so purchase, the trustee being in the actual possession of the trust estate, and empowered to sell, take good title as against the *cestui que trust* (Grove v. Heirs of Robards, 36 Mo. 523), nor that these principles are as applicable to corporate grantees as to others. [Farmers' & Traders' Bank v. Kimball Milling Co., 1 S. D. 388, and cases cited; Bank v. Peyton, 15 Tex. Civ. App. 189.] And, as far as the trust follows the property, so far will equity follow the trust, retake the trust estate and restore it to its rightful owner. [Oliver v. Piatt, 3 How. l. c. 401.]

As already stated, it is conceded that Lula Young and Eda K. Meyer bought in good faith, for a valuable consideration, and without notice, and took good title to the lots they purchased.

Frank P. Storm, one of the defendants, in whose name the title to the seventy-foot lot in the northeast corner of the Kingshighway tract now stands, was the

son of John F. Storm, of Storm & Farish, and the clerk and bookkeeper of that firm, took title with notice of the trust and paid nothing for the lot, John F. Storm having furnished the money therefor and claiming the beneficial interest therein.

John F. Storm and Frank P. Storm own one hundred and ninety-nine of the two hundred shares of the Storm Real Estate Company, in the name of which corporation the title to the Jefferson Avenue property now stands. John M. Storm, a son of John F. Storm owns the other share of stock in that company. John F. Storm conducted for both himself and the company the exchange of properties whereby the Jefferson Avenue property was conveyed to the Storm Real Estate Company. He owned the property exchanged by the company and is and was the owner and manager of the company itself. The Storm Real Estate Company took title with notice, paying nothing. Besides, the deeds to the Storm Real Estate Company and to Frank P. Storm were deeds of quitclaim, and, by force of that fact also, the title in their hands is subject to the equities with which it was impressed in the hands of their grantors. [Eoff v. Irvine, 108 Mo. 1. c. 385, 386; Condit v. Maxwell, 142 Mo. 266; Zweigart v. Reed, 221 Mo. 1. c. 46.]

Under the circumstances of this case no commissions can be allowed Storm & Farish or either of them for any of their services in respect to the property in controversy. "It is settled law in this State that an agent who has been guilty of fraud in the transaction of his principal's business forfeits his rights to commissions as such." [Van Raalte v. Epstein, 202 Mo. 1. c. 196; Harrison v. Craven, 188 Mo. 1. c. 610.]

Since Storm & Farish were authorized by the terms of their agency to sell, therefore as to that portion of the property which they sold to Lula Young and Eda K. Meyer, they are not chargeable with the present value of the property, but with its value at

the time it was sold. The minimum price at which they were to sell having been fixed by the terms of the instrument which created their agency and there being no satisfactory evidence that the property sold to the purchasers mentioned was of greater value at the time of sale than the minimum fixed as stated, we are of the opinion that they should be charged with such minimum in the case of the property sold to Eda K. Meyer, to-wit, $46,265, as of the date of the sale. As to the property sold to Lula Young, since that included the house on the Kingshighway property, with which Storm & Farish had no right to intermeddle, they should be charged with the whole amount received for that lot, $5500, and allowed nothing for the expense incurred in moving the house thereto.

The judgment in this case is reversed and the case remanded with directions to the trial court to enter its judgment declaring all conveyances of the properties in controversy, whether at trustee's sales or otherwise, to Brockmeyer, John F. Storm, Frank P. Storm, John M. Storm, The Storm Real Estate Company and Kehoe to have been conveyances in trust for the use and benefit of appellant; and also divesting Frank P. Storm of the title to the lot fronting seventy feet on Forest Park Boulevard, conveyed by Brockmeyer to Hatton, by Hatton to John F. and Lizzie J. Storm, by John F. and Lizzie J. Storm and John M. Storm to the Storm Real Estate Company, and by the Storm real Estate Company to Frank P. Storm, vesting the same in appellant; also divesting the Storm Real Estate Company of the title to the Jefferson avenue properties and vesting the same in appellant. Further, judgment will be entered canceling the four thousand dollar deed of trust on the properties in controversy and the Laclede avenue property and the note secured thereby, and canceling the $3500 deed of trust on the lot fronting seventy feet on Forest Park Boulevard.

In settling the accounts between the parties, Storm & Farish must be charged with the actual rents received to May 26, 1898, the date of the sale to Kehoe, and with a sum not less than two hundred dollars per month thereafter until December 17, 1904, and after this last mentioned date John F. Storm and the Storm Real Estate Company must be charged with $228.50 per month to the date of this judgment, unless the rents during that time exceeded that amount, in which event the actual amount received must be charged to them.

Storm & Farish must also be charged with the $5500 received from Lula Young, as of the date of the deed to her, and with $46,265, as of date of the deed to Eda K. Meyer.

Credits are to be allowed for interest on the original deeds of trust executed by Brockmeyer and for the amounts paid on the principal thereof, for taxes, special taxbills, and necessary repairs, not including any repairs on the house on the Kinghshighway property and not including any amount expended in removing that house to the lot sold to Lula Young.

No credit is to be made or charge allowed in connection with the sale to Hatton for Storm of the seventy-foot lot on Forest Park Boulevard. Credit must also be given for the sum of $500 and costs of suit in taking account of the purchase of the title conveyed by the sale under execution on the Leonori judgment, unless the amount actually paid was less than that sum, in which event credit should be given for the amount paid.

No commissions of any kind will be allowed Storm & Farish and no commission allowed on the loan negotiated on the lot sold Hatton for Storm. Interest at eight per cent per annum is to be allowed appellant against Storm & Farish and the Storm Real Estate Company on any balance in their hands at any time belonging to appellant.

The deed of trust for $11,000 on the Jefferson Avenue property, in case it is now held otherwise than by or for Storm or the Storm Real Estate Company, with interest to date, must be taken into account in determining the amount of the money judgment to be rendered. If held by or for Storm or the Storm Real Estate Company it must be ordered canceled.

With these directions, the judgment is reversed and the cause remanded for further proceedings not inconsistent with this opinion. *Brown, C.,* concurs.

PER CURIAM.—The foregoing opinion of BLAIR, C., is adopted as the opinion of the court. All the judges concur.